The court will proceed to the third case, Schillinger v. Kiley. Mr. Federer May it please the court. Daniel Schillinger was brutally beaten by another inmate so severely that he suffered a fractured skull, bruised lung, and other serious injuries. Three times the guards knew of this risk to Schillinger's safety. Three times the guards disregarded the risk. Defendants knew of the threat that Terry posed to Schillinger beforehand, yet they did not take any steps to protect Schillinger, such as ensuring the guards were on the range where the inmates were heading or separating the two inmates. Defendants heard an emergency alarm blaring for help at the location of the attack, yet they did not respond for at least five to eight minutes in a situation where every second could make the difference between life and death. And even when defendants did belatedly respond, they simply sat and watched the attack for another... ...and failed to do anything or that they failed to respond. The allegations against the defendants in this case are that they were aware of the dispute between the assailant and your client by virtue of this exchange during rec and that they didn't proactively do something to report it up the chain of command. That's the claim that the district court allowed to proceed past screening, and that was a quite reasonable construction of this complaint as I read the complaint. There is no plausible inference that can be drawn from this complaint that these three defendants, Starkey, Kiley, or Mattie, Sergeant Mattie, who wasn't even in the yard at the time of this exchange between the assailant and your client, there's no plausible inference that they were at the scene of the act, the attack itself, and were slow getting there and then were slow in intervening once the attack was underway. Respectfully, I disagree, Your Honor. The complaint alleged staff sat and watched the attack, and I think this complaint is best read, at least plausibly read... That's a really strange reading of this complaint, an extremely strange reading of this complaint. They identify the COs who were in the yard and asked about what was going on between these two inmates, and then later on in the complaint there's an allegation that there were no staff at the scene of the attack and that once staff, generic, unidentified, were there, staff, unidentified, generic, stood around and did nothing. I think other portions of the complaint make clear that staff met defendants, Your Honor. Paragraph 25, Schillinger alleges that the staff should have protected him after what they heard and seen at recreation. That's another generic reference to the staff who eventually responded to the scene of the attack and did nothing once they saw what was going on. There's absolutely nothing in this complaint to link that staff reference to Starkey, Kiley, or Mattie. I think it's the best reading of staff in that paragraph because who else could have referred to them? It's an extremely strained reading. The district court is very experienced at reading pro se complaints, and the district court construed this complaint in a very reasonable way based on what's in it and permitted a single claim to go forward for failure to protect against the two COs who were in the yard and the unidentified sergeant that one of the COs spoke to afterwards, saying there might be some kind of a dispute going on, some kind of a fight. But there's nothing beyond that that would support any plausible inference that those three defendants were the staff at the scene who stood around and did nothing when the attack was underway. Well, I think it's consistent with other portions of how he writes this complaint. When he didn't know who a defendant was, he didn't refer to them generically as staff members. He referred to them as John Doe defendants. So before he knew who Mattie was, he referred to them. John Doe defendants are specifically identified by reference, not identified by name, but identified by reference to their station, which is that those were the corrections officers who were monitoring the security cameras. That's not a reference to these defendants. Well, I think it is. That's very clear from the complaint. He's not referring back to the two COs in the yard, Kylie and Starkey, and not referring back to the unidentified sergeant who was on Delta Unit. And this attack took place on Charlie Unit. That's clear in the complaint as well. Yeah, but I think at least Kylie at least might be on Charlie Unit because he was just finishing escorting Charlie Unit inmates back from recreation. There's no inference that can be drawn from this complaint that he was on Charlie Unit. It's just not there. So let's get right to the exhaustion argument about whether this particular claim that the district court allowed to proceed was properly exhausting. Sure. Well, I think Ricardo Rirausch is directly on point here in controls. In Schillinger's inmate complaint, he said there were no guards on the range at the time of the attack. I think that's understood as ambiguous. Just like Ricardo could be referring to the guard's delayed response to the attack, but it could also be referring to the guard's failure to protect him from the attack in the first place. In Ricardo, this court was confronting with an inmate grievance, which mainly complained about wanting harsher penalties ex post after he was raped, but along the way included a sentence that the administration don't do their job, sexual assault should never happen. And Ricardo said this language is ambiguous about whether it's referring to harsher penalties ex post to deter future rapes or saying that the guard at issue in that case should have protected the inmate from the attack in the first place. And Ricardo said in light of the ambiguity, prison should have considered both, and therefore the inmate exhausted both. And I think that's very similar to this case. It's ambiguous whether his complaint about no guards being on the range at the time of the attack should be understood as a complaint about the delay or whether it could be construed as talking about failure to protect beforehand because if there were guards at the range at the time of the attack, Terry couldn't have attacked Schillinger. I think Sean V. David confirms what Ricardo says. Sean V. David discusses the nature of the wrong test, which everybody agrees is applicable here, and discusses it in conscious distinction to the elements of pleading test where you do have to plead every element. I think defendants are essentially asking this court to require an inmate to plead every element in his claim. And third, I'd just note that it's the defendant's burden to prove that Schillinger failed his office's administrative revenues, so any ambiguity on that issue should be construed in Schillinger's favor. I think the authority relied on by the district court and by my opposing counsel is an apposite. He primarily relies on Farina. And in Farina, this court made the sensible holding that an inmate's grievance about one factual issue does not exhaust a claim about a separate factual issue. In Farina, an inmate filed a grievance complaining about the denial of medical care following a rape, later tried to sue guards claiming they should have protected him from the rape in the first place. That's two separate factual issues involving two different sets of defendants, two different factual transactions, the administrative decision to deny medical care, and the failure to protect beforehand involving two different sets of actors, the prison administration and the guards. Schillinger's complaint, by contrast, involves one factual transaction, one set of actors, the guards, one quick factual transaction, the failure to protect him from Terry. It all occurred at one place, one time, a very short sequence. I also think the district court erred in defining its analysis to the forecourts of the inmate complaint. Wisconsin regulations determine what was required to exhaust, and Wisconsin includes provision providing for investigations at every step in the case. That points to a rule that takes account of the investigations in determining whether an inmate has exhausted his claim. Right, but the investigation is informed by the forecourts of the complaint, and the forecourts of the complaint do not mention that anybody had advance warning, any officer had advance warning of an imminent attack. That's just completely absent from this complaint. The complaint simply says, I was wondering why there was no correctional officer on the range, meaning Charlie unit, at the time of the incident, and why it took so long for them to respond. That doesn't put an investigator on notice that a corrections officer was aware, to say nothing of these two corrections officers and the sergeant, was aware of the dispute between the assailant and Mr. Schillinger. I think that's exactly the situation, Ricardo, Your Honor. In Ricardo, the inmate grievance never named any particular prison guards. I'm not talking about naming names. I'm talking about identifying the underlying complaint. The underlying complaint is somebody knew, I told somebody, and they did nothing. Then a certain sort of investigation would happen at the prison level. That's not what this complaint said. This complaint said, why didn't anybody come? And so that puts the investigator on notice that the complaint is one of slow response, not somebody knew and did nothing, but slow response. That's what's being complained about here. That's not an exhaustion of a very different sort of specific failure protect claim. I think the claim in Ricardo was even vader. There, just as the administration don't do their job, not even the guards don't do their job. And here he talks about the guards not being on the range in a separate sentence from his delay claim and his inmate complaint. He says there were no guards in the range at the time of the attack, and later he says, and they delayed in responding to me. So I think that's ambiguous, and the prison should have considered both possibilities. If Ricardo exhausts, then Schillinger exhausts. Mr. Frederick, can I ask you just a question on kind of a different line of thinking on it? One thing I had a hard time with is getting my head around the concept that there's three claims here. It seems to me that there is a single failure to protect claim that arises out of the same set of facts, the facts that Judge Sykes is referring to, and that the plaintiff is alleging, alleged at least in the complaint that he filed in federal court, that in that same operative set of facts, there's a few different touch points here where the named defendants acted with deliberate indifference. One, just this failure to prevent in light of what happened at the rec yard. Two, the failure to respond. And then three, the failure to intervene. But it's just one claim. Is that the right or wrong way to think about it? Well, I litigated it as I did because that's how the district proceeded, and that's how I understood this court's order when I was appointed counsel. But I would also be very happy to have the court consider it all just cumulatively as one incident. The only reason I say that is because I may have misread the district court order, but I'll tell you how I read it. I read it as he's adequately pled for screening purposes of failure to protect claim, which is the generic label of the claim. On it goes. We'll see what happens from here. And then we get to the exhaustion analysis, and that's what struck me. The exhaustion analysis struck me as just incomplete because it covers the factual dimension of the failure to prevent, but that it doesn't touch upon the no response aspect of it. Certainly, I'd be happy for the court to go forward on that basis, and I agree with Your Honor that it's really all one factual transaction that needs to clearly exhaust it because whatever you say about the inmate complaint not putting them on notice beforehand, it's purely putting them on notice of the delayed response and the failure to intervene. So if the court wants to consider it all one transaction, I'd be happy for it. Do you think he pled one Eighth Amendment claim or three? It's difficult to say. Is this just linguistics or something at this point? Well, I'd be happy for the court to consider it all as one. He did please two separate counts, one failure to protect, one deliberate indifference. But it's a pro se complaint, so I think it could be read generously. It's not held to the same standards as a complaint drafted by a lawyer. So I think it would be quite reasonable to read it as all stating just one failure to protect claim that encompasses the delayed response and the failure to intervene claims, and in which case I think he clearly has all said that one. Mr. Federer, do you want to save some time? Yes, please. Thank you, Your Honor. Thank you, Mr. Federer. Mr. Johnson-Karp? Good morning, Your Honors. May it please the court, Assistant Attorney General Gabe Johnson-Karp for the appellees. Your Honors, I think this case can be affirmed on the straightforward basis that the district court decided it below that Mr. Schillinger failed to exhaust the claims that he's now presented in federal court. I think to get right to the point that Judge Scudder raised at the end, I think a fair reading of the complaint is, yes, one claim for deliberate indifference, but I think as we read the district court's exhaustion decision, the court then gets to the point that there wasn't a plausible claim about what happened after rec time, that all that was even plausibly left, well, I won't say plausibly, but all that was even potentially left at that point was sort of the pre-attack facts that these defendants knew about what was happening, but that claim was most certainly unexhausted. So I think . . . It's almost as if, I'm just not seeing it on the page, but when you get to the exhaustion opinion, it's almost as if the district court has already screened out the other two aspects of it, but without saying that. And so the exhaustion opinion focuses on the rec yard and all that and then points to the grievance and says the grievance, I mean accurately, never put anybody on notice that any of these individuals knew any of this, and so there's a failed exhaustion there. But I'm thinking, well, hold on, there's other aspects of the complaint. But I may be wrong. Maybe they were screened out and I just missed it. Well, I'll concede that I missed it as well then. I originally didn't read the screening order as distinguishing between sort of a pre-attack and a post-attack distinction, but I think that . . . You kind of read it as just one Eighth Amendment complaint? That's how I read it, Your Honor. One Eighth Amendment claim? The inference from the court's exhaustion opinion, the district court's exhaustion opinion, was that all that we plausibly have here was, in the district court's opinion, the pre-attack allegations and that those are most certainly unexhausted. Excuse me. I think the court has already touched on the fundamental distinction between these two claims. We have one, the inmate complaint, raising a why wasn't anybody there type of claim, whereas his federal complaint has now pointed to three defendants and said that they knew things, that he had these interactions, and that they should have done X, Y, and Z. Those are fundamentally different types of claims, and his raising the first in his inmate complaint could not . . . And as a practical matter, would have prompted a very different sort of an investigation at the institution level. Obviously, this investigation was short-circuited because there was a criminal investigation going on, but setting that aside, the whole point of the system, the grievance system, is to put some focus on the investigation that the grievance CO will do. It's not completely open-ended. There aren't resources for that. That's exactly right, Your Honor. It cannot be the case that the point of exhaustion is to prompt sort of the institution-wide investigation that would be necessary to reach the point of highly . . . Right, and the system, there are thousands of these every year, and the system can't possibly be expected to isolate the specific claim that was permitted to proceed, in this case, from this very generalized grievance. I agree completely, Your Honor, and I think that that's why Wisconsin, in its regulations, has provided what's required for administrative exhaustion. In Wisconsin Administrative Code, DOC 310.05, the rule is that before an inmate may commence a civil action against any officer in the officer's official or individual capacity, and I'm skipping officer, employee, or agent, for acts or omissions while carrying out that person's duties, the inmate shall exhaust all administrative remedies. And then in 310.09, the inmate is required to clearly identify the issue. So when we read the expectations of DOC here, it's that clearly identifying the issue is saying that CO did this to me. And so here, raising a generalized claim of nobody was there doesn't fulfill the purposes of the regulations and doesn't fulfill the broader goals of the exhaustion doctrine generally. Is that the way that provision's been interpreted, just as a matter of practice, clearly identify the issue that you need to name the who, what, where, when, how, why? It has not been explicitly stated a who, what, when, where, and why, but most recently this court in the Streckenberg case pointed to 310.05 when it affirmed dismissal against multiple defendants against whom the inmate had not raised specifically directed inmate complaints. And twice in the paragraph discussing dismissal against those defendants, the court noted that the inmate there failed to raise inmate complaints against them, citing 310.05. So there has been that construction of these provisions, but I don't think that there's been, as far as I'm aware, a sort of clearly layout who, what, when, where, and why. Because Mr. Federer, if I read his brief right, he says, look, these things come in different flavors, and this one is more general. Illinois has one that's more particular. And if Wisconsin is adopted the more general, what's wrong with this grievance here? Well, I don't think that Wisconsin is completely wide open. I think reading these two provisions together along with, I'd also cite to the court the objectives provision of DOC 310, which is DOC 310.01 sub 2 sub b. And just to be clear, these are the old regs that we've discussed in the briefs. They've been renumbered a bit. But the purpose there in 310.01 sub 2 b, again, points to raising specific allegations against a department officer. And the idea there is, I think, if you have a claim against somebody, point to that person. Certainly, there will be gray areas where perhaps a grievance raises one general claim that could be read two ways, as pointing to one individual versus another. We're not in that gray area here. Here, we're talking about two fundamentally different types of claims. The inmate complaint claim saying, why wasn't anybody there? And his federal complaint saying, these two defendants and somebody else that they talked to knew about this ahead of time. They should have taken multiple steps to protect me. And that's why they're deliberately indifferent. So I don't think we need to get into the gray area here, because this complaint was clearly deficient in terms of Wisconsin regulations and in terms of the expectations of the exhaustion doctrine. Unless the court has any further questions on exhaustion, I would just briefly touch on the plausibility issue that has been raised. The court discussed the question of identifying staff versus these specific defendants. And I would, unless there are questions on that, I would just point to two other deficiencies that we raised in our brief, which most notably is that Mr. Schillinger specifically alleged that these defendants were somewhere else. So there isn't a plausible expectation that these defendants would be responding to another unit. He said they were working on Delta Unit. The fight happened on Charlie Unit. So without alleging any additional facts of why these defendants would have been leaving their unit, we get even further from any plausible claim about deliberate indifference for the post-attack facts. It just looks to me like looking at Judge Connolly's opinion at screening, he let all dimensions of this go forward. I think I missed this earlier. He says, likewise, after hearing a report about a potential fight, Sergeant Doe allegedly did nothing. As a result, the plaintiff was left without any staff assistance while Terry was severely beaten. That's on appendix page 7. And then he reaches a conclusion. Accordingly, the plaintiff may proceed with Eighth Amendment claims against these defendants. I mean, he puts it in the plural. Maybe he was thinking about it in the plural. I don't know. It looks like it's all going forward to me from this. And then we get to screening, and we're only analyzing one aspect of it. Well, as I said, I think the inference there is that Judge Connolly saw this as one plausible claim and that that plausible claim was unexhausted. And I think that that goes to the idea that what he's alleged about the post-attack facts simply doesn't state a plausible claim. Unless the Court has any further questions, appellees would ask this Court to affirm the decision below, primarily on the basis of exhaustion, but additionally on the grounds of plausibility, as we've discussed in the brief. Thank you, Your Honors. Thank you. Mr. Turner. So to return to exhaustion real fast, Ricardo applied the same nature-of-the-wrong test applicable here. Ricardo, they never named any guard as having knowledge. If that suffices to exhaust, then this suffices to exhaust. As Your Honor pointed out, Wisconsin does not have these sort of detailed regulations that Illinois does, but they're attempting to geribrate the nature-of-the-wrong test to get them. As Ricardo said, if they want those sorts of details in the inmate presence, they should promulgate a regulation and do so. If I could say a quick word about Streckenbach. I think Streckenbach is the same problem as Farina. Two separate factual issues. One, these guards retaliated. The inmate grievance talked about retaliation against the inmate in violation of the First Amendment, and he later tried to sue, claiming that other guards should take a separate action to prevent that. I think those are two different sets of actions, two different underlying factual issues. As far as Wisconsin regulations, as I read my opposing counsel's brief, he's not disputing that the nature-of-the-wrong test applies, and in any event, the general purpose contained in a preambulatory provision of Wisconsin regulations can't control over the more specific text contained later in the provision. And, you know, I think your reading of the screening order may very well be right, in which case I think the court should vacate and let the district court consider sort of these other two claims, whether they exhausted them. As far as the plausibility point about whether they're on the trial unit, I think it's reasonable to infer that Kiley was at least on trial unit, because he had just finished escorting Charlie and inmates back from recreation. I think it's reasonable to think that Starkey was probably heading back to trial unit because he just went over to Delta unit to report the incident at the recreation yard to his supervisor, Sergeant Matty, and then presumably went back to trial unit inmates where he had been dealing with just minutes before. Unless there are any further questions. All right. Thank you, Mr. Federer. Thank you, both counsel. Mr. Federer, you have the additional thanks of the court for accepting this appointment and may be representing your client. Thank you. Deeply honored to do so. Case is taken under advisement.